UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

PENNY POLLARD,

                  Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                  Defendant.

―――――――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

07-CV-440
(LEK/VEB)

## I. INTRODUCTION

In November of 2004, Plaintiff Penny Pollard filed an application for Social Security Disability Insurance ("SSDI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since August 4, 2003, primarily due to back pain, along with breathing impairments and medication side effects. Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Conboy, McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action on June 8, 2006, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 12, 2009, the Honorable Norman A. Mordue, Chief United States District

―――――――――――――――――――――――――――――

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor, Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of Civil Procedure.

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.


## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSDI benefits on November 15, 2004, alleging that she had been unable to work since August 4, 2003.  (T[2] at 53).  The application was denied on March 14, 2005.  (T at 27-31). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 19, 2005. (T at 32).  On January 26, 2006, Plaintiff appeared with counsel at a videoconference hearing before ALJ Carl E. Stephen.  (T at 289).

On May 12, 2006, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 16-24).  ALJ Stephen's decision became the Commissioner's final decision on March 23, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

Plaintiff commenced this action on April 24, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on July 12, 2007. (Docket No. 11).  The Commissioner filed a Brief in opposition on July 17, 2007. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No.10 ).

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1. Commissioner's Decision**

5

The ALJ determined that Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity at any time relevant to the decision. (T at 23). Further, the ALJ found that Plaintiff has suffered from severe musculoskeletal impairments, but that those impairments did not meet or equal the level of severity of any disabling condition set forth in Appendix 1 of the applicable Social Security Act Regulations (the "Regulations"). (T at 23).

After reviewing the medical evidence, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work activity. (T at 21). The ALJ found that Plaintiff can lift twenty (20) pounds occasionally, ten (10) pounds frequently, can stand or walk about six (6) hours in an eight (8) hour work day, and sit about six (6) hours in an eight (8) hour work day. (T at 23). The ALJ concluded that Plaintiff could not perform her past relevant work as a home health aide, because that job required Plaintiff to engage in heavy lifting. (T at 23). Considering Plaintiff's residual functional capacity and vocational background, the ALJ found that Rule 201.21 of Appendix 2, Subpart P of the Regulations (commonly referred to as the "Grids"), mandated a finding of "not disabled."

As noted above, the ALJ's decision became the Commissioner's final decision on March 23, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

## 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers five principal arguments in support of her position. First, she argues that the ALJ did not adequately acknowledge the existence and severity of her breathing impairments and the side effects of her medications. Second, Plaintiff contends that the ALJ failed to give

6

proper weight to the opinions of her treating and examining physicians.  Third, she asserts that the ALJ failed to properly determine her residual functional capacity.  Fourth, Plaintiff argues that the ALJ did not properly assess her subjective complaints of pain and disabling symptoms.  Fifth and finally, Plaintiff contends that the ALJ failed to demonstrate that jobs exist in significant numbers that Plaintiff can perform. This Court will address each argument in turn.

### a.     Consideration of Breathing & Medication Issues

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff contends that the ALJ erred by failing to acknowledge the existence and severity of her breathing impairment and medication side effects. Plaintiff correctly notes that the ALJ did not make specific reference to a breathing impairment. However, the medical evidence concerning that impairment is quite limited. For example, Plaintiff points to treatment she received in a hospital emergency room for chest pain and breathing difficulties in September of 1997 (T at 91, 95), nearly six (6) years before the alleged onset of disability. Although Plaintiff's medical records indicate that she was periodically noted to suffer from asthma and bronchitis (T at 140, 153, 248)[4], there is no indication that these conditions are severe or would even arguably interfere with Plaintiff's ability to perform work.

Notably, when initially asked to state the nature of the "illnesses, injuries, or conditions that limit [her] ability to work," the Plaintiff referenced her back pain, but made no mention of any alleged breathing problems. (T at 60).[5]  Plaintiff was seen by her treating physician, Dr. Sanjay Shah, in June of 2005 after suffering from pneumonia. Dr. Shah noted that Plaintiff's lungs were clear and that she had no complaints. (T at 285). Accordingly, although the ALJ did not make specific reference to Plaintiff's purported

---

[4]The same records also indicate that Plaintiff has smoked one and a half packs of cigarette daily for twenty-five years. (T at 248).

[5]Plaintiff subsequently listed "asthma" as a serious medical condition.

8

breathing impairment, there is no indication in the record that this condition might even arguably be considered a "severe" impairment.  To the extent that Plaintiff's claim regarding the alleged severity of her breathing impairment is based upon her subjective complaints, the ALJ found those complaints less than fully credible.  (T at 20).  For the reasons stated below, that decision was in accord with applicable law and supported by substantial evidence.

Regarding the alleged impairment caused by medication side effects, Plaintiff testified at the hearing that Flexeril and Vicodin lessen her pain but "make [her] sick to [her] stomach, dizzy and tired." (T at 296).  Plaintiff further notes that two years prior to the alleged onset of disability, she was treated in the emergency room after complaining of "sore throat, nausea, cough" and dizziness. (T at 115).  In April of 2005, one of Plaintiff's treating physicians, Dr. Christopher V. Horn, opined that Plaintiff's medication "will severely limit [her] effectiveness in the work place due to distraction, inattention, drowsiness, etc." (T at 280).

Plaintiff correctly notes that the ALJ did not specifically reference dizziness. However, he did indicate that Plaintiff "tried to avoid medication" and noted that she complained that Vicodin caused "nausea." (T at 20).  To the extent that Plaintiff's argument is based upon Dr. Horn's assessment, the ALJ considered and discussed that assessment, finding it to be not worthy of controlling weight.  For the reasons discussed below, this Court finds that the ALJ's decision in that regard was supported by substantial evidence. Moreover, to the extent that Plaintiff's claim is premised upon her subjective complaints, those complaints were likewise considered and found to be less than fully credible. Accordingly, this Court finds no reversible error in the fact that the ALJ did not find that

9

Plaintiff's breathing impairment and medication side effects were severe impairments.

### b. Weight Afforded to Opinions of Treating and Examining Physicians

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

Plaintiff contends that the opinions of her treating physicians were entitled to controlling weight. In support of this argument, Plaintiff cites to the following: a January 2004 report of any office visit with Bedros Bakirtzian, M.D. of Seaway Orthopedics, in which Dr. Bakirtizan notes that Plaintiff "will remain off work and continue with her physical

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

therapy" (T at 268); a medical opinion survey completed by Dr. Christopher V. Horn, in which Dr. Horn opined that Plaintiff could stand/walk for about two (2) hours in an eight (8) hours day and sit for about four (4) hours in an eight (8) hour day (T at 278); and workers' compensation benefits forms completed by Dr. Shah, in which he indicated that Plaintiff was totally disabled.  (T at 287).

The ALJ carefully considered the opinions of Plaintiff's treating physicians and concluded that they were entitled to "some weight, but not controlling weight." (T at 22). This Court finds that the ALJ's decision in this regard was supported by substantial evidence. First, Dr. Bakirtzian did not opine that Plaintiff was totally disabled.  In fact, his January 2004 notes indicated that Plaintiff was going to remain out of work while undergoing physical therapy, not that she was unable to work. (T at 268).  This simply meant that Plaintiff was not going to continue her employment as a home health aide, not that she was incapable of performing any work at all.  Indeed, Dr. Bakirtzian later opined that Plaintiff was "[u]nable to do the type of work that she was doing before." (T at 270). By implication, this suggests that Plaintiff would be able to do some other, less physically demanding work.  Further, Dr. Bakirtzian noted that an MRI scan "[did] not reveal any neurological compromise" and that Plaintiff was "improved with physical therapy." (T at 268) and indicated that he could not "explain" Plaintiff's symptomatology. (T at 269).

Dr. Horn's assessment of Plaintiff's physical limitations was undermined by contradictions in the doctor's own records.  For example, Dr. Horn opined that while Plaintiff could only carry twenty (20) pounds occasionally, she could carry twenty-five (25) pounds frequently. (T at 278).  Further, Dr. Horn noted that Plaintiff's impairments or treatment would only cause her to be absent from work "[l]ess than once a month." (T at 279).  This

11

suggests that Dr. Horn believed Plaintiff was not totally disabled.   Indeed, Dr. Horn's examinations showed "[n]o neurologic deficit" (T at 245) and he indicated that the MRIs revealed "no significant abnormality." (T at 245).   Dr. Horn also opined that Plaintiff's disability was "permanent *partial* mild to moderate," suggesting that he believed Plaintiff was not totally disabled. (T at 276) (emphasis added). See Verginio v. Apfel, No. 97-CV-456, 1998 WL 743706, at *7-8 (N.D.N.Y. Oct. 23, 1998) (noting that finding of partial disability by treating physicians "demonstrate[d] that even plaintiff's doctors do not believe that plaintiff is totally disabled"). Moreover, the issue of "disability" under the Act is not a medical issue to be decided by a treating source, but an administrative finding reserved to the Commissioner. See 20 C.F .R. 404.1527(e); SSR 96-5p. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Id.

Dr. Shah's finding of total disability was made in connection with Plaintiff's request for workers' compensation benefits.   Because disability for purposes of workers' compensation benefits is determined under a different standard than the standard used in the Social Security context, the ALJ was not bound to afford Dr. Shah's finding controlling weight. See Dibernardo v. Chater, 979 F.Supp. 238, 243 (S.D.N.Y.1997) ("Nor did the ALJ have to give controlling weight to the fact that Dr. King marked a box for 'total disability' on two Workers' Compensation forms since Workers' Compensation requirements are different than the requirements regarding awards of disability benefits by the Commissioner."); Crowe v. Commissioner of Social Security, 01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) ("First, as already noted, the final determination of disability is reserved for the Commissioner, and therefore the doctor's opinions of 'total' disability were not binding

on the ALJ. Second, the opinions were rendered in the context of Crowe's [workers' compensation] claim, which is governed by standards different from the disability standards under the Social Security Act.").   Moreover, Dr. Shah's notes from an October 2005 visit indicate that Plaintiff reported that her pain was "managable" and that she had no neurological deficit.  (T at 285).

Plaintiff points to several pieces of evidence that she contends supports the opinions rendered by her treating physicians.  However, each of these items was reviewed and analyzed by the ALJ and found to be non-persuasive.

For example, in May 2004, Ruth A. Dowdy, a physical therapist employed by Seaway Orthopedics, conducted a functional capacity evaluation.  Ms. Dowdy opined that Plaintiff was incapable of working a full eight (8) hour day and that she was limited to occasional lifting of twenty (20) pounds, frequent lifting of ten (10) pounds and sitting/standing for two (2) hours in a four (4) hour day.   (T at 229-230).  The ALJ was not bound to accept this assessment because a physical therapist's opinion is not considered a "medical opinion" under the Act.[7]  Further, as noted by the ALJ, the actual testing results contradicted Ms. Dowdy's conclusions and indicated that Plaintiff was able to lift thirty (35) pounds occasionally, seventeen (17) pounds frequently, and eight (8) pounds constantly.  (T at 229).  Further, Ms. Dowdy did not offer any supporting explanation for her suggestion that Plaintiff could only work a four-hour day.

_____

[7] The Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995)(citing 20 C.F.R. § 404.1527(a)(2)). C.F.R. § 404.1513(a) lists five categories of "acceptable medical sources," none of which references physical therapists. Rather, physical therapists are listed in a different section as "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

It also bears noting that a June 2004 report prepared by Physician's Assistant Bruce Bassity indicated that Plaintiff was "looking for someone else to declare that she is unable to work." (T at 171).   PA Bassity declined to make such a declaration, instead recommending that Plaintiff consider vocational training through New York State's Office of Vocational and Educational Services for Individuals ("VESID"). (T at 171).

Lastly, Plaintiff was seen on a consultative basis by Dr. John Krawchenko, who opined that Plaintiff was totally disabled for purposes of workers' compensation benefits. (T at 282-283).  However, for the above stated reasons, this assessment was made in the workers compensation context and was thus not binding upon the ALJ.  Further it was inconsistent with other evidence in the record (*e.g.* diagnostic findings indicating the lack of neurological deficits, the absence of a definitive diagnosis, the expression of opinions that Plaintiff's disability was no more than partial and mild to moderate).

 It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physicians and instead substituted his lay opinion for competent medical evidence. Rather, the Court finds that the ALJ carefully reviewed and acknowledged the medical evidence and opinions of Plaintiff's treating physicians, and rejected those opinions deemed to be conclusory or inconsistent with the medical evidence provided in Plaintiff's record.

Accordingly, this Court finds that the ALJ's weighing of the opinions of Plaintiff's treating physicians was in accord with applicable law and supported by substantial evidence.

14

### c. Determination Regarding Residual Functional Capacity

"Residual functional capacity" or RFC refers to the activities and abilities the claimant remains able to perform despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); see Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y.1999). To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e); see Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir.1984). The ALJ must specify the functions a claimant is capable of performing. Martone, 70 F.Supp.2d at 150.

An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. Id. (citing LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990)).

In the present case, the ALJ determined that Plaintiff has the residual functional capacity to perform light work. (T at 21). Specifically, the ALJ found that Plaintiff can lift twenty (20) pounds occasionally, ten (10) pounds frequently, can stand or walk about six (6) hours in an eight (8) hour work day, and sit about six (6) hours in an eight (8) hour work day. (T at 23). Plaintiff challenges this determination, noting that her treating physicians declared her unable to work and that the ALJ's findings contradicted the functional capacity evaluation performed by Ms. Dowdy, a physical therapist, in May 2004.

The Court finds that the ALJ's RFC determination was supported by substantial evidence. As noted above, the determinations of Plaintiffs' treating physicians were made in the context of workers' compensation benefits and, in any event, were contradicted by other evidence in the record. As addressed above, Ms. Dowdy's assessment is not

15

considered a "medical opinion."  Moreover, some of Ms. Dowdy's findings were consistent with the ALJ's RFC determination.  For example, Ms. Dowdy noted that Plaintiff could occasionally lift thirty-five (35) pounds and frequently lift seventeen (17) pounds. (T at 229). Dr. Bakirtzian likewise opined that Plaintiff could frequently lift ten (10) pounds and occasionally lift up to twenty (20) pounds, a finding consistent with the ALJ's determination in this regard.  (T at 270)  For the foregoing reasons, the Court finds no reversible error with regard to the ALJ's RFC determination.

### d. Evaluation of Plaintiff's Subjective Allegations of Pain

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted). To this end, the

16

ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth

in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's

credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must

state his reasons "explicitly and with sufficient specificity to enable the Court to decide

whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v.

Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In the present case, the ALJ found that Plaintiff's complaints of disabling pain were

17

not entirely credible.  (T at 21).  Plaintiff challenges this finding, noting that her testimony should have been afforded significant weight because she has a long work history and her complaints were supported by the opinions of her treating physicians.  However, this Court finds that the ALJ had legitimate reasons to discount Plaintiff's testimony.  Plaintiff's treating sources have been unable to develop a diagnosis, and diagnostic testing has not revealed any definitive cause for Plaintiff's complaints.  For example, EMG[8] and nerve conduction testing in February 2004 indicated no evidence of neuropathy, radiculopathy, or radiculitis. (T at 192-93).  Further, March 2004 cervical spine x-rays showed no abnormalities.  (T at 172).

In addition, Plaintiff told Dr. Shah that her pain was "manageable" in October 2005. (T at 285).  She refused recommended laser surgery.  (T at 277).  PA Bassity indicated that Plaintiff appeared to be "looking" for someone to declare her totally disabled, but he refused and recommended that Plaintiff consider vocational training through VESID. (T at 171). Plaintiff's clinical examinations also did not indicate any measurable muscle atrophy or wasting (T. at 207-208, 263, 277), which would ordinarily be expected if Plaintiff's activities were as limited as she asserts.  See Castillo v. Shalala, No. 93 CIV. 7805, 1995 WL 598977, at *3 (S.D.N.Y. Oct. 10, 1995) ("Atrophy would be expected if Plaintiff had been avoiding discomfort and had not been performing any tasks, as he had alleged.")

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted).

---

[8]"Electromyography, or EMG, involves testing the electrical activity of muscles." See http://www.emedicinehealth.com/electromyography_emg/article_em.htm (last accessed May 20, 2009).

If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that her pain and other symptoms were disabling. Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision in this regard should therefore be upheld.

### e. Failure to Establish Whether Jobs Exists in Significant Numbers

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66

19

(1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

Regarding the number of jobs available in the national economy, the Social Security Regulations permit the ALJ to take administrative notice of the significant number of jobs available in the national economy involving sedentary and light work. 20 C.F.R. §§ 404.1566 (d), 416.966 (d).  These guidelines have been upheld as valid by the Supreme

Court.  See Heckler v. Campbell, 461 U.S. 458, 468 (1983) ("To require the Secretary to relitigate the existence of jobs in the national economy at each hearing would hinder needlessly an already overburdened agency.").

In this case, the ALJ determined that Plaintiff's impairments prevented her from returning to her prior work as a home health aide, because that job involved heavy lifting. (T at 23).  However, the ALJ concluded that Plaintiff had the RFC to perform light work.  (T at 23).  The ALJ then noted Plaintiff's age (37 at the alleged onset of disability and 40 at the time of the ALJ's decision), educational background (high school), and work experience (semi-skilled). (T at 23).  In light of these factual findings and Plaintiff's RFC, reference to the "Grid", namely Medical-Vocational Rule 201.21, mandates a finding of "not disabled."

Plaintiff challenges the ALJ's finding in this regard, essentially restating her previously advanced arguments concerning the opinions of her treating physicians and the functional capacity assessment performed by Ms. Dowdy.  For the reasons discussed extensively above, the Court finds that the ALJ's findings as to these matters were supported by substantial evidence.  His reliance on the Grids was therefore appropriate and in accordance with applicable law.

## IV. CONCLUSION

After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating physicians, and afforded Plaintiff's subjective claims of pain and other limitations an

appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 27, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

 May 27, 2009

Victor E. Bianchini
United States Magistrate Judge